

**SO ORDERED.**

**SIGNED this 10 day of November, 2008.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                  CASE NO.

**ROBERT EARLE WOOD**                                  08-04060-8-ATS

  DEBTOR

### ORDER DENYING OBJECTION TO CONFIRMATION

The matter before the court is the Objection to Confirmation filed by Coastal Federal Credit Union ("CFCU"). A hearing took place in Raleigh, North Carolina on October 21, 2008.

Robert Earle Wood filed a petition for relief under chapter 13 of the Bankruptcy Code on June 17, 2008. CFCU holds a security interest in Mr. Wood's 2007 Ford Fusion, a vehicle that was purchased on June 1, 2007. CFCU, which financed the purchase, contends that the payoff owing to CFCU on the petition date was $25,526.25 plus interest at 7.25% per annum. Mr. Wood's plan proposes to treat CFCU's claim as a secured claim in the amount of $15,500 with interest at 7%, with the balance to be treated as an unsecured claim. CFCU objects, contending that this treatment does not comply with the requirements of the hanging paragraph contained in 11 U.S.C. § 1325(a) or the district court's opinion in In re Price, 2007 WL 5297071 (E.D.N.C. 2007).

As noted above, on June 1, 2007, the debtor purchased a 2007 Ford Fusion that was financed by CFCU. In connection with the purchase, Mr. Wood traded in a 2005 Mazda Tribute on which

he owed $15,618.30. Mr. Wood also made a $1,000 cash down payment, and he received a $1,000 rebate that Ford was offering with the purchase of 2007 Ford Fusions. On the same day, Mr. Wood and Capital Ford entered into a Retail Installment Sale Contract that contains the provisions required by the Truth in Lending Act and other consumer protection laws. On its face, the contract was assigned to CFCU. The contract sets forth the itemization of amount financed as follows:[1]

| | | |
|---|---:|---:|
| Cash Price (including $405.45 sales tax) | | $ 21920.45 |
| Total Downpayment = | | |
| Trade-in 2005 MAZDA TRIBUTE | | |
| Gross Trade-In Allowance | $ 8000.00 | |
| Less Pay Off Made By Seller | $ 15618.30 | |
| Equals Net Trade In: | $ -7618.30 | |
| + Cash | $ 1000.00 | |
| + Other REBATE | $ 1000.00 | |
| Unpaid Balance of Cash Price | | $ 21920.45 |
| Gov't License or Registration Fees LIC/REG | $ 55.00 | |
| Other Charges | | |
| to CAPITAL ONE for Prior Credit or Lease Balance | $ 5618.30 | |
| to CAPITAL FORD for Document Fee | $ 379.00 | |
| to NSO for GAP | $ 750.00 | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 6802.30 |
| Amount Financed | | $ 28722.75 |

The hanging paragraph of § 1325(a) provides that

> For purposes of paragraph (5)[of section 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of

---

[1] Line items that read "N/A" in the contract are omitted.

>    any other thing of value, if the debt was incurred during the 1-year period preceding
>    that filing.

11 U.S.C. § 1325(a) ("hanging paragraph") (the word "period" after "910-day" was apparently unintentionally omitted from the statute).  This court's opinion in In re Price, 363 B.R. 734 (Bankr. E.D.N.C. 2007), and the district court's subsequent opinion, addressed the question of whether and how the hanging paragraph applies when the amount financed includes components that relate to the purchase of the vehicle and components that do not.

In Price, the debtors purchased a 2001 Lincoln LS and financed the purchase pursuant to a retail installment sales contract.  The contract indicated that the purchase price of the vehicle was $14,437.17, and that the debtors made a cash down payment of $1,400 and traded in a 1997 Nissan Maxima.  The trade-in allowance for the Maxima was $2,861, which was $2,837.96 less than the amount owed on the Maxima.  The debtors also incurred standard fees and taxes of $426 and purchased "gap insurance" at a cost of $600.  The total amount financed under the contract was $16,901.13, and the secured creditor filed a claim for $18,332.37.  The debtors' plan proposed to bifurcate the claim, providing a secured claim for the value of the vehicle, or $12,475, and an unsecured claim for the balance.  The secured creditor objected, contending that the hanging paragraph of § 1325(a) precluded bifurcation of its claim.

The debtors argued that the funds advanced to pay the "negative equity" in the trade-in vehicle, as well as the funds advanced for the purchase of gap insurance, were not "purchase money" and thus the creditor did not have a "purchase money security interest" in the vehicle securing the full amount of the debt.  The debtors further contended that because some of the debt was not purchase money, the hanging paragraph simply did not apply.  This court agreed with the debtors that the funds attributable to the negative equity and the gap insurance were not part of the purchase

price of the vehicle, and thus were not purchase money. The court then turned to the question of whether the presence of non-purchase money funds within the transaction "transformed" the entire interest into a non-purchase money security interest (the "transformation" rule), or whether the court should apply the "dual status" rule, applying the hanging paragraph only to that portion of the claim that was attributable to the purchase of the vehicle.

The court noted that under the Uniform Commercial Code as adopted in North Carolina, application of the dual status or transformation rule is within the court's discretion where the collateral is consumer goods. Price, 363 B.R. at 745, citing N.C. Gen. Stat. §§ 25-9-103(e), (f) and (h). Because there were so many factors affecting the true purchase price of a vehicle, including the allowance given by the seller for the trade-in and the possible manipulation of the purchase price to accommodate the trade, the court found that it is a "virtually impossible task" to ascertain the portion of the amount financed attributable to the purchase price. 363 B.R. at 746. Accordingly, the court held that "generally when negative equity is involved, the appropriate rule is the transformation rule." 363 B.R. at 746.

The secured creditor appealed the Price decision to the district court. The district court agreed with this court that "negative equity and gap insurance do not come within the definition of 'purchase money obligation' and thus cannot give rise to a purchase money security interest," Price 2007 WL 5297071 at *3; however, the district court disagreed with this court's application of the transformation rule and "agree[d] with those courts which have found that 'the dual status rule preserves the purpose of the hanging paragraph . . . .'" Id. at *4. The district court further noted that in entering the contract, the parties reached agreement as to the issues related to the allowance given for the trade-in and the purchase price of the vehicle, and the district court was not compelled by this

4

court's concerns about the difficulty of determining the actual purchase price. Id. at *4, n.8. The district court's decision has been appealed to the United States Court of Appeals for the Fourth Circuit, and it is expected that oral argument will be scheduled in early 2009.

After the district court's decision in Price, debtors and their secured creditors in this district have generally followed the dual status rule, applying prepetition payments proportionally to the purchase-money and non-purchase-money portions of the debt, treating the balance of the purchase price as fully secured, and preserving objections to confirmation pending a final determination in Price. Presumably the parties have been able to agree as to what portions of the claim relate to the purchase price, and what portions do not. In this case, however, the parties disagree.

Mr. Wood first contends that this court should not follow the district court's ruling in Price, and should apply the transformation rule. CFCU acknowledges that there is a split of authority as to whether a district court's appellate decision is binding on a bankruptcy court in any case other than the case appealed, but it maintains that the judges in this district have been following the district court's opinion since it was entered, and that the court should follow Price until the Fourth Circuit rules in that case. The court agrees with the debtor that it technically may not be bound by the district court's opinion; but, debtors and their secured creditors have developed a practical approach to the problem that works well unless, as in this case, the purchase price is not readily ascertained.

This case demonstrates the difficulty this court described in its opinion in Price. The debtor made a cash down payment of $1,000, and applied a $1,000 rebate that he received as a result of purchasing the Ford Fusion toward the purchase. Both of these amounts appear in a section of the contract entitled "Total Downpayment." This section also includes those items attributable to the vehicle Mr. Wood traded-in, namely, the trade-in allowance for the Mazda ($8,000) and the amount

5

still owed on the Mazda ($15,618.30), leaving a net trade in amount of -$7,618.30. CFCU contends that because of all these items appeared in one box, followed by a line item reading Amount to Capital One for Prior Credit Balance of $5,618.30, the cash down payment and rebate were paid toward the negative equity on the trade, and were not credited to the purchase price. This application would result in a higher amount financed related to the purchase price, and thus a higher amount that must be treated as fully secured pursuant to the hanging paragraph of § 1325(a).

The debtor argues that the rebate is clearly attributable to the purchase of the vehicle. Had the debtor purchased anything other than a Ford Fusion, he would not have been entitled to the $1,000 rebate and that amount would not have been credited to him. Similarly, the cash down payment should be allocated to the purchase price. The contract simply lays out the various forms of items credited toward the down payment. Though the contract states that $5,618.30 was paid to Capital One for the Mazda, the fact is that $7,618.30 was due on the note secured by Mazda, and that money was advanced to Capital One. The court does not have information as to whether Capital Ford applied the $2,000 toward the $7,618.30 it paid to Capital One on its books or simply subtracted it from the overall transaction, but even if Capital Ford somehow applied the $2,000 to the trade-in transaction, that did not reduce the amount owed to Capital One.

There are good arguments from both parties as to whether the down payment and rebate ought to be applied toward the purchase price or the negative equity; each argument is a plausible interpretation of the contract. There is no evidence whether the value of the Mazda is inflated or deflated. The court does not know the answer to these questions, though it does seem that the cash down payment and the rebate are more directly related to the purchase of the Ford than the trade-in of the Mazda. This problem demonstrates this court's point in <u>Price</u>: sometimes, it is impossible to

determine what amount of the debt is attributable to the purchase price of the vehicle.  Accordingly, the court believes it makes sense, in this case, to apply the transformation rule.

In Price, the district court relied heavily on In re Pajot, 371 B.R. 139 (Bankr. E.D. Va. 2007), which held that "the court may determine on a case by case basis that certain transaction[s] . . . are not clearly articulated enough . . . or otherwise abuse the dual status rule, . . . [and] apply the more stringent transformation rule allowing bifurcation of the entire transaction."  Price, 2007 WL 5297071 at *4 n.8 (citing Pajot, 371 B.R. at 164).  By citing this passage with approval, the district court gave the nod toward making the determination of which rule to apply on a case by case basis. In this case, the court cannot easily identify the purchase price of the vehicle, and the transformation rule should be applied.

Based on the foregoing, the objection to confirmation filed by CFCU is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**